[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11571
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00041-WTH-GRJ


KELVIN MILES,

Plaintiff-Appellant,

versus

L. JACKSON,
Sgt.,
S. HABERLAND,
Detention Officer,
B. RINEHART,
Detention Officer,

Defendants-Appellees,

J. CLOUTIER,
Detention Captain, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 7, 2018)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Kelvin Miles, proceeding pro se, appeals the district court's grant of summary judgment to three jail officers on his 42 U.S.C. § 1983 excessive use of force claim.

For present purposes, we view the evidence in the light most favorable to Miles, making all reasonable inferences in his favor. Jefferson v. Sewon Am., Inc., 891 F.3d 911, 919 (11th Cir. 2018).

I.

In August 2011 jail officers placed Kelvin Miles, a convicted prisoner located at a Florida state jail, in leg restraints and handcuffs before conducting a routine inspection of his cell, which turned up insurance paperwork. Miles began to curse at one of the officers after the officer told him that he was not allowed to have the paperwork in the cell. That prompted jail officer L. Jackson to order Miles, who was housed in a "special management" unit because he had previously

2

fought with another inmate, to step further back into the cell.  Miles did not.  So Jackson attempted to grab Miles, but Miles pulled his body and arms away.

With the help of jail officer S. Haberland, Jackson tackled Miles onto the bunk in the cell.  Another officer who was standing nearby, B. Rinehart, dived onto Miles' midsection, causing Miles to fall off the bunk and feel a jolt of pain in his lower back and left hip.  Less than one minute later a nurse came into the cell, but Miles said he did not want any medical attention.  Jackson escorted Miles outside of the cell, and, without provocation, slammed Miles against a wall.  Shortly after that Miles filed prison grievances that mentioned the three officers' use of force inside the cell, and a prison nurse prescribed him Tylenol.

In March 2015 Miles brought an excessive force claim against officers Jackson, Haberland, and Rinehart.  Miles alleged that the three officers' use of force against him inside the cell, and Jackson's use of force against him outside the cell, was cruel and unusual punishment that violated the Eighth Amendment.  The district court granted summary judgment to the officers.  This is Miles' appeal.

II.

We review de novo a district court's grant of summary judgment.  See Jefferson, 891 F.3d at 919.  Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant "is

3

entitled to judgment as a matter of law." Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362 (11th Cir. 2018) (quotation marks omitted).

Miles contends that the district court erred by granting summary judgment to the officers on his excessive force claim. He argues that their use of force was excessive because he was in leg restraints and handcuffs when they subdued him inside the cell and when Jackson pushed him against a wall outside the cell.

The Eighth Amendment's ban on "cruel and unusual punishments" governs a jail officer's use of force against a convicted prisoner. Kingsley v. Hendrickson, 576 U.S. __, 135 S. Ct. 2466, 2475 (2015). An officer's use of force is excessive, and thus violates the prisoner's Eighth Amendment right to be free from cruel and unusual punishments, only if the force "was applied . . . maliciously and sadistically for the very purpose of causing harm." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 1085 (1986)). To determine whether the officer applied the force maliciously and sadistically, we consider the following factors: "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat 'reasonably perceived by the responsible officials,' . . . [4] 'any efforts made to temper the severity of a forceful response,'" and "[5] [t]he absence of serious injury." Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992) (quoting Whitley, 475 U.S. at 321, 106 S. Ct. at 1085). In doing that we "give a

4

wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (quotation marks omitted).

The officers did not apply their use of force inside the jail cell maliciously or sadistically. First, there was a need for that force because, as Miles conceded in his deposition, he not only failed to comply with officer Jackson's order to go further into the jail cell, but also evaded Jackson's attempt to get him to comply. Cf. Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) ("The need for the use of force [was] established by the undisputed evidence that [the prisoner] created a disturbance."). Second, the need was proportional to the force the officers used. The use of a takedown "is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008), overruled on other grounds as recognized by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Third, the officers reasonably perceived that Miles' behavior inside the cell was threatening, particularly because he had a propensity for violence, which his assignment to a special management unit shows.

The fourth and fifth Whitley factors also weigh against finding a constitutional violation. The officers' use of force was tempered because a nurse came to assist Miles within a minute of the incident. See Fennell, 559 F.3d at 1220

("[T]hat the officers immediately summoned medical assistance for the injured inmate was strong evidence that there was no malicious and sadistic purpose in the use of force."). And Miles has failed to show that the officers' use of force caused him serious injury — the only treatment deemed necessary after the incident was a Tylenol prescription.

Miles has failed to point to any evidence showing that officers Jackson, Haberland, or Rinehart used excessive force inside the jail cell. The district court did not err in granting summary judgment to them.

Whether officer Jackson applied his use of force against Miles outside the jail cell maliciously or sadistically is a separate question. But we cannot reach that question because Miles did not, as Chapter 33–103 of the Florida Administrative Code requires, file a prison grievance about that use of force. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (explaining that under § 1997e(a), "[a]n inmate incarcerated in a state

prison . . . must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.").[1]

**AFFIRMED.**

---

[1] Construed liberally, Miles' brief also states that the court abused its discretion by denying his motion to compel production of grievances that other prisoners had filed against the officers, and by denying his motion for sanctions for the failure to preserve a copy of a videotape from a security camera that recorded the incident.  We disagree.  As to the first motion, the court found that there was no evidence that other prisoners had filed grievances against the officers and that, even if such grievances existed, they would be irrelevant because the officers did not use excessive force in this case.  As to the second motion, the court found that the officers did not have a duty to preserve the videotape because Miles' prison "grievances did not reference any video or any intent to file a lawsuit."  Neither finding reflects a clear error of judgment or an application of the wrong legal standard.  See Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1307 (11th Cir. 2011).